NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW JERSEY

-------------------------------------------------------------X

In re:                                                                  Bankruptcy Case No. 16-28015

Binder Machinery Co., LLC                                  Chapter 11

        Debtor.

-------------------------------------------------------------X

Joseph D. Morris

        Plaintiff,

vs.                                                                           Adversary No. 17-1107

Sandton Credit Solutions Master Fund III, LP

                                        **MEMORANDUM OPINION**

        Defendant.

-------------------------------------------------------------X

**APPEARANCES**

Joel Glucksman, Esquire
Robert E. Levy, Esquire
Scarinci & Hollenbeck, LLC
1100 Valley Brook Avenue
Lyndhurst, New Jersey 07071
*Attorneys for Plaintiff*

John J. Murphy, Esquire
Stradley, Ronan, Stevens & Young, LLP
457 Haddonfield Road
Cherry Hill, New Jersey 08002
*Attorney for Defendant*

In July 2015, Joseph Morris purchased certain construction equipment from Binder Machinery Co., LLC ("Debtor"). Throughout the bankruptcy proceeding, Sandton Credit Solutions ("Sandton") disputed Mr. Morris' assertion that he was a secured creditor with a superior interest to Sandton. In 2017, Mr. Morris filed an adversary proceeding seeking a declaratory judgment that he was a buyer in the ordinary course that had purchased the construction equipment from the Debtor free and clear of any liens, interests or encumbrances. On February 22, 2018, the court entered summary judgment in favor of Sandton. The court found that Sandton held a perfected, first-position security interest in the construction equipment and was not divested of that interest by the July 2015 transaction that purported to sell the equipment to Mr. Morris. The summary judgment order provided that "Morris shall reimburse Sandton for any decline in the fair market value of the remaining Equipment as a result of Morris's unwarranted assertion of a possessory and/or security interest in the Equipment which damages will be determined at a hearing." The court conducted a hearing on damages on October 3, 2018, and the parties submitted briefs in support of their positions on November 9 and November 15, 2018.

<u>Expert qualifications</u>

At the damages hearing, Sandton presented the expert testimony of Brendan Binder and Mr. Morris presented the expert testimony of Gregg Dight. Mr. Morris's counsel stipulated to Mr. Binder testifying as an expert at the hearing, but now argues that Mr. Binder's testimony should be given little to no weight because of his limited qualifications and his alleged conflicts of interest.

On the first point, Mr. Morris posits that Mr. Dight is substantially more qualified to opine on the decline in value of the equipment because he is a licensed appraiser, has taken courses in the field, and has published articles. By contrast, Mr. Morris points to the facts that Mr. Binder has no formal education in the appraisal field and that he has never worked as an appraiser.

The court is not persuaded that the lack of formal education lessens the value of Mr. Binder's opinions. Valuing equipment is a vital component of Mr. Binder's job -- it is his bread and butter. During his time with Binder Machinery, Mr. Binder has valued hundreds of pieces of construction equipment both those purchased from manufacturers and those accepted as trade-ins from customers. Accurate valuation is a practical imperative in Mr. Binder's business because if he incorrectly values a piece of equipment it affects his bottom line. The court sees no reason to discount Mr. Binder's testimony based on lack of formal credentials. Overall, the court found Mr. Binder to be a careful and credible witness.

On the second point, Mr. Morris argues that Mr. Binder's credibility is diminished both because Sandton holds the mortgage on Mr. Binder's house and also because he is currently in possession of some of the disputed equipment and is attempting to sell it on Sandton's behalf. Mr. Morris notes that Mr. Dight, by contrast, is a disinterested professional appraiser.

While this court is always mindful of potential conflicts of interest, it fails to perceive any disqualifying conflict here. The court was presented with no evidence that Mr. Binder's mortgage is in default or that he was attempting to refinance it or any other fact that might conceivably make it beneficial to him to unfairly advance Sandton's interests. Likewise, the fact that Mr. Binder, in the ordinary course of his business, is selling equipment on which Sandton

holds a lien is not evidence of improper bias. Accordingly, the court will not give less weight to Mr. Binder's valuation testimony.

Damages calculations

The Dight report[1] concluded that Sandton should be awarded the sum of $40,000 for the decline in the fair market value of the remaining equipment. The starting point for the Dight damages figure is December 9, 2016.[2] The Binder report[3] concluded that Sandton should be awarded $246,788 in damages for the decline in the fair market value of the remaining equipment. The starting point for the Morris damages figure is July 17, 2015.[4]

Mr. Morris argues that the reliability of the Binder valuation is "critically damaged" because he did not conduct an independent valuation of the equipment as of July 17, 2015, and simply relied on the invoice amounts as establishing fair market value as of that date. A trier of fact may, of course, reject an expert opinion if it determines that the opinion is unreliable.[5] However, the court finds that under the facts of this case, equating the invoice prices with fair market value as of that date is not erroneous.

July 17, 2015 was the date that Mr. Morris alleges he purchased the equipment from Binder Machinery Company in the ordinary course of business and extinguished Sandton's security interest in the equipment. Throughout this bankruptcy proceeding Mr. Morris has consistently taken the position that this was a bona fide sale negotiated between two seasoned

---

[1] Morris Ex. 14
[2] The date that the Debtor's senior secured creditor, Callidus Capital Corporation, was paid off and the equipment at issue was formally abandoned.
[3] Sandton Ex. 11
[4] The date of the invoices for Mr. Morris's alleged purchase of the equipment from Binder Machinery Company.
[5] *See, e.g., Drysdale v. Woerth*, 153 F. Supp. 2d 678 (E.D. Pa. 2001) (trier of fact is not required to adopt the valuation opinion of either expert)

businessmen.[6] As part of the summary judgment motion, Mr. Morris claimed that as part of his construction business he had bought and sold equipment of the type purchased from the Debtor.[7] He also claimed that the goal of the transaction was to "allow Morris to make money on the sale or leasing of the equipment."[8] On numerous occasions Mr. Morris reaffirmed his position that he purchased a million dollars' worth of equipment including in his UCC-1 filing and in his Proof of Claim in the bankruptcy. Under the facts of this case, it would indeed "lack a firm foundation in reality" not to use the invoice figures as the starting point of the analysis.[9]

Mr. Binder testified that he was operating under the assumption that the two parties negotiating the sale of the equipment in July 2015 "were in agreement on the value of the equipment at the time and that it was a fair market purchase."[10] The Dight report used the following definition of fair market value: "An opinion expressed in terms of money, at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts, as of a specific date."[11] On cross-examination of Mr. Binder, Mr. Levy asked about the financial difficulties that Binder Machinery Company was experiencing at the time of the July 2015 transaction. He asked "[n]otwithstanding the fact that there had been this dialogue between Mr. Morris and the Binder Companies attempting to help the financial condition of the Binder Companies, during the course of the preparation of your report you did not perform an independent appraisal of the value of the equipment as of July 17, 2015, correct?"[12] The obvious

---

[6] The sale was conducted on behalf the Debtor by Mr. Binder's late father, Robert Binder.
[7] Sandton Ex. 2 at 2
[8] Sandton Ex. 2 at 3
[9] Morris brief at 2
[10] Transcript of October 3, 2018 hearing at 18
[11] Morris Ex. 14 at 10
[12] Transcript at 33-34

conclusion Mr. Levy wants the court to draw is that if the Debtor was under a compulsion to sell in July 2015 then the invoice prices do not represent fair market value. It is not that straightforward. If Mr. Morris was aware in July 2015 that Binder Machinery was in dire financial straits and needed an influx of cash, that would put Mr. Morris in a superior bargaining position and theoretically he would have been able to get the equipment at a bargain price. Thus, the $1M invoice total would represent the **low** end of fair market value at the time. So, rather than undercutting a claim that the invoices reflected market value, Mr. Binder's distress would enhance it. The other alternative - that this was a sham transaction and that Mr. Morris paid an inflated price for the equipment as a favor to Mr. Binder and to undercut Sandton's blanket security interest - is not a conclusion Mr. Morris wants this court to draw.[13]

The $672,000 value Mr. Dight ascribes to the equipment as of July 2015 essentially ignores the invoice price, despite the fact that Mr. Dight's valuation method was exclusively the sales comparison approach. The Dight report stated that the income and cost approaches had not been used because market data was available to use the sales comparison approach.[14] According to his own report, the sales comparison approach "focuses on the actions of actual buyers and sellers" and yet the *actual* sale of the equipment at issue was given short shrift.

Mr. Dight testified that he was shown the invoice for the actual sale but considered it "only one example of a possible sales comparison." He stated that he preferred to rely on the broader market data.[15] On cross-examination, Mr. Dight stated that he considered the actual sale

---

[13] Count VII of Sandton's counterclaim, which the court did not rule on given its finding that Mr. Morris was not a bona fide purchaser, seeks to avoid the July 2015 transaction under N.J. Stat. Ann. § 25:2-29 alleging that the Debtor "entered into the Transaction with Morris with the intent to hinder, delay or defraud one of its secured creditors, Sandton, and circumvent Sandton's perfected security interest in the Equipment."
[14] Morris Ex. 14 at 13
[15] Transcript at 7

to be of no more importance to his valuation than the sale of similar equipment; however, the Dight report does not indicate that the actual sale was even considered in arriving at a valuation. The report states that in arriving at his conclusions "a search was made of similar items in the general market place that have sold and are presently offered for sale."[16] The report does not list what comparable sales were considered or what adjustments, if any, had to be made to those sales. The report does not indicate that the *actual* sale was even a data point under consideration along with the undisclosed sales in the general market place. Throughout his testimony, Mr. Dight was inconsistent on the issue of whether he considered the July 2015 transaction to be an arms-length transaction worthy of consideration.[17]

For these reasons, the court rejects $672,000 as the fair market value of the equipment as of July 17, 2015, and accepts the $1,000,000 valuation in the Binder report.

Starting date for damages calculation

The next issue for the court to determine is the appropriate starting date for determining damages. Mr. Morris argues that there could not possibly be any decline in the value of the equipment "as a result of" any actions by Mr. Morris until after the entry of the December 9, 2016 order approving the sale of the Debtor's assets[18] on the theory that Sandton could not have asserted control over the equipment before that date because of Callidus' superior claim.

That position ignores the central fact that the wrongful act at issue here occurred on July 17, 2015. There is no legal justification to measure damages from the date of the bankruptcy sale when that date is unrelated to the act that entitled Sandton to damages. The normal measure of

---

[16] Morris Ex. 14 at 13
[17] Transcript at 70 and 77
[18] That order approved the sale of substantially all of the Debtor's assets to Komatsu America Corporation and also abandoned the bankruptcy estate's interest in the equipment that is the focus of this litigation.

damages for the commission of a tort is all damages proximately caused by the injury.[19] A decline in the value of the equipment over the three-year period in which there was a cloud on title is reasonably foreseeable. There is no reason for that period to be tolled as result of an inter-creditor agreement with Callidus to which Mr. Morris was not a party.

Mitigation of damages

Mr. Morris asserts that Sandton should not be entitled to any damages as a result of the decline in the value of the equipment because Sandton failed to mitigate its damages. Mr. Morris contends that "nothing impeded Sandton from seeking to enforce its rights … it simply chose to sit idly by and let its alleged damages multiple."[20] Even if the court were to accept the position that Sandton bears some culpability for not initiating a formal legal proceeding sooner, that does not equate with being denied any damages. The case cited by Mr. Morris stands for the proposition that a party must take reasonable steps to mitigate damages and if it fails to do so it is denied recovery only for those loses that could have been avoided.[21] The court fails to see how Sandton's attempt to sell the equipment that Mr. Morris claimed ownership of or filing a declaratory judgment action earlier necessarily would have resulted in avoiding damages.

## Conclusion

The court finds that the failure to account for the actual sale of the equipment in a comparable sales based valuation so seriously damages the credibility of the Dight report that the court cannot rely on its ultimate conclusions. Accordingly, in reliance on the Binder report and the supporting testimony at the damages hearing the court finds that Sandton should be awarded

---

[19] *Schroeder v. Perkel*, 87 N.J. 53 (1981)
[20] Morris brief at 13
[21] *Am. Express Travel Related Servs. Co. v. D & A Corp.*, 2007 U.S. Dist. LEXIS 83095 (E.D. Cal. 2007)

$246,788 in damages for the decline in the fair market value of the remaining equipment.

Sandton may submit an order in accordance with this opinion.

<i><u>/s/ Kathryn C. Ferguson</u></i><br>
KATHRYN C. FERGUSON<br>
Chief Judge, US Bankruptcy Court

Dated: March 15, 2019